IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| CHARLES A. HELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| vs. | ) | No. 09-6144-CV-SJ-JCE-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for supplemental security income ["SSI"] benefits and for disability insurance benefits ["DIB"] under Titles II and XVI of the Act, 42 U.S.C. §§401 and 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on

the record as a whole.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski.  The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff was 35 years old at the time of the hearing before the ALJ. He completed the 8th grade. He has past relevant work as a general laborer. In his disability report, he claimed that he is disabled due to bleeding strokes and impaired reading ability.

At the hearing before the ALJ, plaintiff testified that he had a lot of trouble in school because of a reading disability. He was in special education classes throughout school. He cannot read at all. The ALJ submitted that plaintiff has an IQ of 91, which would indicate low average intelligence, and questioned plaintiff further about his ability to read. He stated that he cannot read a newspaper. Plaintiff acknowledged that he has a driver's license. He testified that he was able to get his license because the test was read to him. He also stated that he repeated first and third grade in school. He has not tried to take any adult literacy classes because he finds it embarrassing not to be able to read at his age. He can perform simple math problems and can add and subtract. He can also count a lower amount of money and make change. When he drives, he just has to know where he is going. He explained that when he came to the hearing, his mother got directions off the Internet and helped him get to the hearing. Plaintiff stated that he is not currently employed. He last worked on the date he got hurt; he worked for Herzog Contracting, laying asphalt on roads. He was a general laborer, and did not have to do any reading on the job. Plaintiff worked at that job for three years, shoveling asphalt. He obtained the work through friends. Before that, he worked at Tire Changer. Plaintiff explained that when he applied for a job, he either had help with the application, or took it home and his mother helped him. His employers knew that he could not read. He stated that he cannot go back to laying asphalt or changing tires because of the heat and lifting. He has very bad headaches every

day, which he thinks are because of a brain aneurysm. His memory was also badly affected by the aneurysm, so he doesn't know for sure when this happened. He stated that it was caused by high blood pressure, as well as meth and coke in his system. He last used drugs the day he got hurt. The ALJ inquired of plaintiff regarding his long history of cocaine and meth use. He reiterated that he stopped using the "day it almost killed me." [Tr. 25]. He stated that he did not go to any drug rehabilitation program, but just stopped on his own. Plaintiff also testified that he has had three DUIs. The last one was about five or six years ago. He no longer drinks alcohol. It was his testimony that since October of 2006, he stopped using cocaine, meth and alcohol. Plaintiff testified that he stopped on his own because he felt he got a second chance at life. He dos not attend any support groups. Regarding his headaches, he has them daily. About every three days, there are worse. They can last from an hour to three or four hours, and medication helps, as does a nap. He is both light and sound-sensitive when he has a more severe headache. He is treated for his headaches by Dr. Cianciolo, who has been treating him since the hemorrhage in 2006. He also has back aches once in a while. He has had problems all his life, and had scoliosis when he was young. His back problems interfere with his ability to work because sometimes he has a hard time walking. It affected him when he was laying asphalt. He had to work, despite the pain. He doesn't take anything for back pain. In terms of his memory problems, plaintiff testified that he has problems remembering things from the day before or years before. He takes medication for depression, which is prescribed by Dr. Cianciolo. He has been taking anti-depressants since he got out of the hospital.

      Plaintiff stated that he lived with his mother, and has never lived on his own. He just stays home and watches movies, although he has trouble staying focused. He can't sit and watch

a whole movie without having to get up. He does have family and friends that come over once in a while. He also has a girlfriend. They just watch movies at home and walk around the yard a little. He tries to help his mother around the house when his headaches aren't really bad. He doesn't cook for himself, nor does he do his laundry, although he has done it in the past. Plaintiff stated that he didn't know why he didn't do it now. He doesn't drive very often, because with the medicine he takes, he doesn't feel safe enough to drive. He gets very nervous and jittery all the time, especially around people. He sleeps off and on during the day and night. He thinks he has problems sleeping because he is nervous. He does not feel like he has a purpose in life since the accident.

Plaintiff's mother testified that plaintiff could not read, even though she had tried to work with him during his school days. She stated that, when he worked, he did not do his own checking and bill paying. She did not know why he had always lived at home. It was her testimony that when he worked at Herzog, he worked long hours. She never knew that he did drugs until she had to take him to the hospital with the brain aneurysm. She acknowledged that he did drink, but does not anymore. After his hemorrhage, she testified that he does not do many things on his own like he used to. He has to be reminded to do everything. It was plaintiff's mother's testimony that he takes medication for headaches and for depression.

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 29, 2006. He further found that the medical evidence established that plaintiff suffers from "status-post stroke, drug/alcohol addiction, in remission and depression." [Tr. 13]. He concluded that plaintiff has the residual functional capacity ["RFC"] to perform "a full range of work at all exertional levels. He has mild to moderate restriction of activities of

daily living, mild to moderate difficulties in maintaining social functioning, mild to moderate difficulties in maintaining concentration, persistence or pace with no episodes of decompensation, each of extended duration." [Id.].  Based on the opinion of a vocational expert, the ALJ found that plaintiff could perform his past relevant work as a general laborer, and could perform  basic unskilled work, such as dishwasher, janitor, assembler, packager, or inspector. Therefore, it was his  finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred in finding that plaintiff did not have a severe physical impairment; that his RFC finding and findings regarding plaintiff's credibility are not supported by substantial evidence; and that the ALJ failed to properly weigh the opinions of the treating and examining sources.

A review of the record indicates that plaintiff was admitted to an emergency room on July 30, 2006, where he was treated for a stroke as a result of his drug abuse.  A CT did not show evidence of an aneurysm or vascular malformation.  He was released from the hospital with diagnoses of subarachnoid hemorrhage, substance abuse, and hypertension.  He was advised to wait to resume driving and working until after a follow-up appointment.  At a follow-up with a neurosurgeon at KU Medical Center, Dr. Grant opined that his most likely diagnosis was cocaine related intracranial hemorrhage. A CT scan showed some resolution of the acute blood from the hemorrhage.  Plaintiff was seen from 2006 until 2008 by Dr. Cianciolo.  He prescribed medication for headaches, anxiety and depression.  Plaintiff reported that his anxiety and headaches improved with medication, although the latter were not completely resolved.  The records also indicate that plaintiff was seen by Louis Bein, a psychologist, who performed an evaluation for the Department of Social Services.  He found plaintiff to have depression and

anxiety. His attention/concentration were noted to be adequate, his memory was impaired, and he was functioning in the low average range of intelligence. Mr. Bein diagnosed plaintiff with cognitive disorder, depression and anxiety disorder. When Dr. Cianciolo prepared a Medical Source Statement ["MSS"] in September of 2008, he gave plaintiff a fair prognosis; found him to suffer from depression, back pain, recurrent headaches, and history of subarachnoid hemorrhage in 2006. He reported that plaintiff had poor ability to function in the workplace, and that his cognitive deficit limited his ability to work with others and follow directions. In December of 2008, plaintiff was examined by Dr. Nora Clark for psychological testing. She found that he had a full-scale IQ of 90, but noted that he was relatively weak in reading. She also found his concentration to be in the low average range. It was her diagnosis that plaintiff had moderate major depressive order, a learning disorder, and alcohol abuse in full remission. Dr. Clark completed an MSS in which she opined that plaintiff would be moderately restricted in some areas, and slightly restricted in others, based on his impairment in concentration and depression.

  The ALJ found that the evidence did not support any physical limitations. He reviewed the medical records, which indicate that plaintiff has a history of cocaine/methamphetamine abuse. Plaintiff contends that the record supports a finding that he suffers from chronic headaches and left shoulder pain, and that he has been treated for these conditions by a treating physician, Dr. Cianciolo. The ALJ noted that plaintiff's headaches responded to medication. When Dr. Cianciolo began treating plaintiff after his discharge from the hospital, he noted no residual, physical effects from plaintiff's stroke. There were no subsequent diagnostic tests that revealed a head injury. While there are treatment notes regarding plaintiff's complaints of headaches, the medical records indicate that these improved with medication. His treating

physician typically continued to prescribe medication for his headaches without changes. With the exception of one report of dizziness, there is no evidence in the record to indicate that plaintiff has reported symptoms that would indicate that his headaches constitute a severe impairment that would impede his ability to work. Not only did plaintiff not testify about a shoulder problem at the hearing, there is also no evidence in the record to suggest that he had a shoulder impairment for a continuous period of 12 months, which is required under the regulations to establish entitlement to disability benefits. There is also no evidence in the record that any physical restrictions were imposed on plaintiff, other than immediately after the stroke when he needed clearance to return to work and to drive. Therefore, the Court concludes that there is substantial evidence in the record as a whole to support the ALJ's finding that he had no severe physical impairments.

Plaintiff also contends that the ALJ failed to properly weigh the opinions of treating and examining sources. He contends that the treating physician, Dr. Cianciolo and Louis Bein, M.S., both noted that he had cognitive deficits that limited his ability to sustain work activity.

Defendant asserts that the ALJ was entitled to reject the doctor's opinion that plaintiff suffered from extreme mental limitations, which was inconsistent with the doctor's own treatment notes and other substantial evidence in the record.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v.

Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. The opinion regarding a claimant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998).

After careful review, it is the finding of the Court that there was substantial evidence in the record as a whole to support the ALJ's decision in terms of how he weighed the opinions of the physicians who had treated or evaluated plaintiff. Initially, it should be noted that it appears that the ALJ inadvertently referred to Dr. Bein's opinion, rather than Dr. Cianciolo's, when stated that he gave no weight to "Dr. Bein's most generous assessment (Exhibit 10F) because it is not supported by the objective findings in the record as a whole." [Tr. 11]. It is clear from a careful review of the record that the ALJ inadvertently referred to the wrong doctor by name, but referred to the right exhibit, 10F. Given his statement regarding a "most generous assessment," it is clear he was referring to the opinion of Dr. Cianciolo. [Id.]. He declined to give Dr. Cianciolo's opinion great weight because he found it not to be supported by the record as a whole. The ALJ determined that there were no clinical findings to support some of the findings on the MSS prepared by Dr. Cianciolo. The Court has fully reviewed the medical records. There is nothing in the doctor's notes to indicate that plaintiff demonstrated the severe limitations that the doctor listed on the MSS. These clinical notes are, as the ALJ found, inconsistent with someone with the extremely severe limitations listed on the doctor's MSS,

which would render him unable to perform any work. The ALJ relied instead on the opinion of Dr. Clark, finding it to be consistent with the evidence of record and the objective findings. Accordingly, the ALJ assessed plaintiff with mild to moderate restriction of activities of daily living, mild to moderate difficulties in maintaining social functioning, and mild to moderate difficulties in maintaining concentration, persistence or pace. Based on a full review of the record, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision to give weight to the assessment by Dr. Clark, and that it was not error to find that Dr. Cianciolo's opinion was inconsistent, not only with his own clinical notes, but also, with other evidence in the record. It is the opinion of the Court that the ALJ did not err in disregarding Dr. Cianciolo's opinion to the extent that he found plaintiff to have extreme and marked limitations, opinions that were not otherwise supported in the record.

The ALJ also evaluated plaintiff's testimony under the factors set forth in Polaski, and found that his credibility was weakened, in part, by inconsistencies in his testimony. The ALJ noted that plaintiff tested in the range of the low average intelligence, despite his problems in school. Additionally, he found that plaintiff demonstrated no signs of mental illness or cognitive problems at the hearing. The ALJ also discredited plaintiff because, despite the assertion that he cannot read, he does have a driver's license, which the ALJ found to be inconsistent. He also noted that despite a long history of drug and alcohol abuse, plaintiff claimed that he stopped using drugs and alcohol on his own, and had never been to rehabilitation. The ALJ also noted plaintiff's daily activities, which included watching television, driving a car, visiting with friends, and having a girlfriend. He found that plaintiff had a "fairly normal lifestyle and does not appear to be too motivated to work." [Tr. 12]. The ALJ did not find plaintiff's mother or

plaintiff to be entirely credible, noting that plaintiff's mother corroborated his testimony.

Having fully reviewed the record, the Court finds that there is substantial evidence in the record to support the ALJ's finding regarding plaintiff being partially credible. In evaluating a claimant's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain, effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). In discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible. Id. at 971-72. "Where adequately explained and supported, credibility findings are for the ALJ to make." Id. at 972.

Based on a full review of the record, the Court concludes that the ALJ adequately detailed the reasons for discrediting plaintiff's testimony, and adequately discussed the factors set forth in Polaski. Regarding the testimony of plaintiff's mother, she basically corroborated what plaintiff said about his condition. It is noteworthy, however, that she disavowed any knowledge of his drug use. The ALJ is not required to make a separate credibility finding concerning her testimony when it would be discredited for the same reasons that plaintiff's testimony was. Therefore, the Court finds that the ALJ relied on substantial, relevant and supporting evidence in explaining her reasons for discrediting plaintiff's complaints. Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991).

Plaintiff contends that the ALJ erred in his RFC finding. A claimant has the burden to

come forward with relevant evidence of her restrictions. The Commissioner's regulations state that it is the claimant's responsibility to provide medical evidence to show that he or she is disabled. See 20 C.F.R. §§ 404.1512, 416.912 (2008); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995). Additionally, the Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the residual functional capacity findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate residual functional capacity based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations).

The ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, with some mental restrictions, which would therefore limit him to basic unskilled work. Based on the opinion of a vocational expert, the ALJ found that plaintiff could perform the job of such as dishwasher, janitor, assembler, packager, or inspector, as well as his past relevant work as a general laborer. After careful review, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC because he properly considered all the evidence of record in analyzing plaintiff's credibility, and then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining the RFC. He clearly took

into account the mental limitations he found credible, for which there is substantial evidence in the record.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling mental or physical impairment, and that he was not disabled under the Act. <u>Dukes v. Barnhart</u>, 436 F.3d 923, 928 (8th Cir. 2006). The ALJ's finding that plaintiff is not disabled is supported in the record as a whole.

Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

<u>/s/ James C. England</u>
JAMES C. ENGLAND
United States Magistrate Judge

Date: 9/23/11